IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| RICHARD AYALA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:19-cv-00024-O-BP |
| § | |
| ANDREW M. SAUL, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Richard Ayala ("Ayala") filed this action under 42 U.S.C. §§ 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). ECF No. 1 at 1. After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

### I. STATEMENT OF THE CASE

Ayala was born on March 13, 1991 and has at least a high school education. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 22. He filed for SSI on June 15, 2015, alleging that his disability began on that date. Tr. 15. On the alleged disability date, he was 24 years old, which is defined as a younger individual. Tr. 22. The Commissioner initially denied his claims on December 22, 2015 and denied them again upon reconsideration on April 25, 2016. Tr. 15. Ayala requested a hearing, which was held via videoconference before Administrative Law Judge ("ALJ") Angelita Hamilton on October 11, 2017 in Oklahoma City, Oklahoma. Tr. 15, 24. The

ALJ issued an unfavorable decision on December 29, 2017, finding that based on the application for SSI, Ayala was not disabled. Tr. 12, 23.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Ayala had not engaged in substantial gainful activity since June 15, 2015. Tr. 17. At step two, the ALJ determined that Ayala had the severe impairments of affective disorder and anxiety disorder. *Id.* She found that Ayala had mild limitations in understanding, remembering, or applying information and in adapting or managing himself. Tr. 18. She found that Ayala had moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. *Id.* At step three, the ALJ found that Ayala's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. She found that Ayala had

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple, routine, and repetitive tasks with only occasional interaction with coworkers, supervisors, and the general public.

Tr. 18–19. At step four, the ALJ found that Ayala was unable to perform any past relevant work. Tr. 22. At step five, the ALJ found that Ayala could perform jobs that existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 22–23.

The Appeals Council denied review on December 14, 2018. Tr. 5. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The

SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

"The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

Ayala argues that the ALJ's RFC assessment did not account for all of his functional limitations and the ALJ erred in failing to consider his reported GAF scores. ECF No. 18 at 5. Ayala asserts that the ALJ did not account for the effect of Ayala's visual and auditory hallucinations upon his mental functioning, and this failure prejudiced him. *Id.* at 12, 19. He also

4

asserts that the ALJ failed to consider justifiable reasons that Ayala was not fully compliant with his treatment, including the fact that he was mentally ill. *Id.* at 17.

Ayala further argues that the ALJ erred by failing to discuss his reported GAF scores in her opinion. *Id.* at 19. The Commissioner responds that although the ALJ did not discuss the GAF scores, she likely considered them because she "discussed the treatment from which the GAF ratings were derived." ECF No. 20 at 17. For the following reasons, the undersigned finds that the ALJ properly considered Ayala's functional limitations and did not err by not discussing his GAF scores.

### A. The ALJ properly considered Ayala's functional limitations.

*1. The ALJ properly considered the effects of Ayala's hallucinations when determining his RFC.*

Ayala argues that the ALJ failed to properly consider his subjective complaints, including the effects of his hallucinations, when determining his mental abilities. ECF No. 18 at 12. He asserts that he experienced hallucinations even with medication compliance, and the ALJ failed to recognize the frequency of his hallucinations in determining his RFC. *Id.* at 16. The Commissioner asserts that the ALJ properly analyzed Ayala's complaints—including the effects of his hallucinations—and that substantial record evidence supports the ALJ's RFC finding. ECF No. 20 at 12, 14. For the following reasons, the undersigned concludes that the ALJ properly considered Ayala's symptoms, and substantial evidence supports the ALJ's credibility determination.

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment

must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical limitations, mental limitations, and other relevant limitations. 20 C.F.R. § 404.1545. In determining the claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. *Id.* § 404.1545(d).

At step four, the ALJ considers the claimant's RFC, which involves assessing the claimant's allegations of symptoms. Pursuant to SSR 16–3p, an ALJ must conduct an objective-subjective, two-step analysis to make this assessment. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam); SSR 16–3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). In the first, objective step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Salgado*, 271 F. App'x at 458–59. If the ALJ identifies an impairment at step one, the ALJ proceeds to the second, subjective step and "considers

the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* This requires a credibility finding regarding the applicant's claims about symptoms. *Id.*

The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Pursuant to SSR 16–3p and 20 C.F.R. § 404.1529(c)(3), an ALJ employs a seven-factor analysis to assess the credibility of a claimant's subjective complaints:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Hobbs v. Astrue*, No. 3:08-cv-1174-G (BF), 2009 WL 2700222, at *4–5 (N.D. Tex. Aug. 27, 2009) (citing 20 C.F.R. § 404.1529(c)(3)); *see* SSR 16–3p, 2017 WL 5180304, at *7–8. Although the ALJ must explain the reasons for her credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. Sept. 9, 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

The undersigned finds that the ALJ's credibility determination is entitled to judicial deference. Here, the ALJ considered and discussed Ayala's testimony concerning his symptoms, including his abilities and difficulties with engaging in daily activities as well as his reports of

7

psychosis symptoms, hallucinations, and anxiety. Tr. 18–20. The ALJ found Ayala's allegations credible only to the extent that they were consistent with her opinion, and she stated specific reasons for discounting Ayala's credibility. In particular, the ALJ noted Ayala's reports of complying with most but not all of his medications, his "numerous" appointment cancellations during his treatment at the Helen Farabee Centers, and the inconsistencies in his testimony about why he was fired. Tr. 18–22. The ALJ's decision was sufficiently specific to make clear that she considered the seven regulatory factors when assessing Ayala's credibility. *See Prince*, 418 F. Supp. 2d at 871.

Ayala appears to further assert that the ALJ erred "by failing to evaluate side effects or symptoms allegedly caused by medication and their impact on the claimant's RFC" because "[she] failed to recognize that Ayala cut back on his medications due to their sedative effect." ECF No. 18 at 14 (citing *Michlitsch v. Colvin*, No. 4:12-cv-416-A, 2013 WL 1880399, at *6 (N.D. Tex. Apr. 18, 2013) (citation omitted)). Ayala's argument on this point is not persuasive. The ALJ's opinion reflects that she evaluated the sedative side effects of Ayala's medications. She noted that by the end of 2015, Ayala was not taking his medications daily, and she cited a medical record showing that he did not take his medications daily because they made him "groggy." Tr. 20–21 (citing Tr. 384). She cited Ayala's testimony that "his medications helped relieve his hallucinations for a time, but no longer provide relief" and that "while his medication helped, he still did not get along with too many people." Tr. 20. Ayala is correct that the ALJ did not specifically mention that he took less medication because of its sedative effects, but the opinion reflects that the ALJ considered the reasons he gave to his doctors, including his reports of sedative side effects. Additionally, the ALJ was required to evaluate Ayala's side effects as part of the seven-factor

evaluation discussed above that the ALJ performed. Therefore, the ALJ did not fail to evaluate side effects allegedly caused by Ayala's medications.

Ayala further argues that the ALJ improperly considered his marijuana usage in discounting his credibility. *See* ECF No. 18 at 15. Ayala takes issue with the ALJ's statement that Ayala did not view his usage as a problem. Tr. 21. The ALJ did not commit prejudicial error here because Ayala has not shown that if the ALJ had analyzed his marijuana usage differently, she would have reached a different credibility determination. *See* ECF Nos. 18, 22. As explained above, the ALJ properly employed the seven-factor analysis to determine Ayala's credibility, and the evidence from the record in its entirety supports her conclusion. Accordingly, the Court should not disturb her credibility decision.

*2. The ALJ properly evaluated Ayala's noncompliance with his treatment.*

Ayala argues that the ALJ did not properly consider the potential reasons for Ayala's noncompliance with his treatment plan. *See* ECF No. 18 at 17. The Commissioner argues that Ayala failed to keep his follow-up appointments, take his medication, and follow prescribed treatment, all of which are indications that he is not disabled. ECF No. 20 at 11. For the following reasons, the undersigned determines that the ALJ did not err because she properly considered Ayala's noncompliance.

Social Security Regulations 82-59 and 18-3p both state that if treatment for a claimant's disabling impairment could be expected to restore the claimant's ability to work, then the claimant must comply with the prescribed treatment to be found disabled and entitled to benefits, unless a justifiable cause exists for the failure to follow the treatment. *Simmons v. Berryhill*, 2018 WL 3900912, at *3 (N.D. Tex. July 31, 2018) (citing SSR 82–59, 1982 WL 31384 (rescinded and

9

replaced by SSR 18–3p[1])); SSR 18–3p, 2018 WL 4945641, at *2–4 (Oct. 2, 2018). In *Simmons*, the Court explained that

> if the ALJ's ultimate finding that a claimant was not disabled is based significantly on the ALJ's perception that the plaintiff's failure to follow a prescribed treatment caused the condition to be worse than it might otherwise be, then the requirements of SSR 82-59 apply. On the other hand, if the ALJ considers the plaintiff's noncompliance merely in assessing the credibility of his subjective complaints, then the requirements of SSR 82-59 are inapplicable. *See* [*Johnson v. Comm'r of Soc. Sec.*, No. 3:11-cv-3126-L (BF), 2013 WL 632104, at *20–21 (N.D. Tex. Feb. 4, 2013)] (stating that, because the ALJ used Plaintiff's non-compliance with her medication only in terms of the credibility determination and not in finding that Plaintiff was not disabled, the ALJ was not required to follow the requirements set forth in SSR 82-59); *Clark v. Astrue*, No. 4:12-0350, 2013 WL 105017, at *7 (S.D. Tex. Jan. 8, 2013) ("It is true, as Defendant argues, that SSR 82-59 need not be followed when the ALJ considers the claimant's non-compliance only in connection with the claimant's credibility and with the severity of the claimant's subjective symptoms.").

*Simmons*, 2018 WL 3900912, at *4 (internal citations omitted).

SSR 18–3p states that the Social Security Administration will determine whether an individual has failed to follow prescribed treatment only if all of the following conditions exist:

> 1. The individual would otherwise be entitled to benefits based on disability . . . under titles II or XVI of the Act;
>
> 2. We have evidence that an individual's own medical source(s) prescribed treatment for the medically determinable impairment(s) upon which the disability finding is based; and
>
> 3. We have evidence that the individual did not follow the prescribed treatment.
>
> If all three conditions exist, we will determine whether the individual failed to follow prescribed treatment . . . .

SSR 18–3p, 2018 WL 4945641, at *2–3.

---

[1] SSR 18–3p rescinded and replaced SSR 82–59 on October 29, 2018. SSR 18–3p, 2018 WL 4945641, at *1 (Oct. 2, 2018).

Here, the requirements of SSR 18–3p do not apply because the ALJ considered Ayala's noncompliance merely in assessing the credibility of his complaints. This means that the ALJ was not required to determine if Ayala complied with his prescribed treatment and, if not, whether his reasons were justified. *See Simmons*, 2018 WL 3900912, at *4. The ALJ noted record evidence of both noncompliance and compliance, and it does not appear that she based her final decision on Ayala's noncompliance. *See* Tr. 20–22. Instead, the ALJ considered Ayala's noncompliance merely to assess the credibility of his subjective complaints. She based her determination on the record as a whole, shown by her clear consideration of the seven factors used to assess a claimant's credibility and her discussion of the evidence that supported her RFC finding. *See* Tr. 18–22. Therefore, because the ALJ properly evaluated Ayala's credibility and was not required to evaluate his compliance under SSR 18–3p, the ALJ properly considered Ayala's noncompliance in her decision.

Ayala argues that his mental illness alone may be a sufficient reason for his noncompliance. ECF No. 18 at 17. The undersigned need not address this argument, however, because the ALJ considered Ayala's noncompliance merely to assess his credibility. Consequently, the ALJ was not required to determine whether Ayala's reasons for failing to comply were justified. *See* SSR 18–3p, 2018 WL 4945641, at *2–3.

### B. The ALJ did not err by not discussing Ayala's GAF scores.

In his brief, Ayala argues that the ALJ failed to properly consider his GAF scores in the record as medical opinions. ECF No. 18 at 19–20. Federal regulations expressly require ALJs to evaluate "every medical opinion" of record. 20 C.F.R. §§ 404.1527, 416.927. "ALJs generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion

justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (internal citations omitted). However, this Court also has noted concerning GAF scores that

> [a]s with other opinion evidence, a medical opinion needs supporting evidence to be given much weight. Even if well-supported, the medical opinion also must not be inconsistent with the other substantial evidence in the individual case record. Instead of viewing GAF scores as absolute determiners of the ability to work, ALJs should make disability determinations on a case-by-case basis, considering the entire record.

*Jackson v. Colvin*, 2015 WL 7681262, at *3 (N.D. Tex. Nov. 5, 2015) (internal citations omitted).

The facts here are similar to those in *Jones v. Astrue*, No. 7:07-cv-155-O, 2008 WL 5024832 (N.D. Tex. Nov. 21, 2008). In *Jones*, the ALJ did not specifically reference the claimant's GAF scores in her decision. Nevertheless, the Court found that the ALJ did not err because she referenced and relied upon treatment records that contained the scores. *Id.* at *5. Similarly, the ALJ here did not specifically reference Ayala's GAF scores, but she referenced and relied upon his treatment at the Helen Farabee Centers, where he was evaluated extensively and received his GAF scores. Tr. 20–22; ECF No. 18 at 6–8. This suggests that the ALJ considered the GAF scores even though she did not specifically cite to them. *See Hoelck v. Astrue*, 261 F. App'x 683, 685–86 (5th Cir. 2008) ("While the ALJ did not expressly mention the lowest GAF score, the ALJ noted the medical visit in which the plaintiff received that score, suggesting that the ALJ did in fact consider it."); *Jones*, 2008 WL 5024832, at *5. "It is within the discretion of the ALJ to determine the credibility of various medical reports in the record." *Jones*, 2008 WL 5024832, at *5 (citation and internal quotation marks omitted). The ALJ discussed Ayala's treatment and diagnoses, evaluated Ayala's medical records, and cited to those records in her decision. *See* Tr. 18–22. She could have permissibly concluded that the GAF scores were entitled to less weight or conflicted with the medical evidence and opinions in the record. *See id.* Because she carefully reviewed the medical opinions and records in Ayala's file, including records of his treatment and evaluation at

the facility where he received his GAF scores, the ALJ did not commit reversible error in failing to specifically refer to those scores in her decision.

## IV. CONCLUSION

The ALJ properly considered Ayala's functional limitations and did not err by not specifically discussing his GAF scores. She followed the correct legal standards, and substantial evidence in the record as a whole supports her decision. Accordingly, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2020) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on **February 14, 2020**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE