IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| RICHARD A. AYALA, | § | |
| Plaintiff, | § § § | |
| v. | § | Civil Action No. 7:19-cv-00024-O-BP |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | § § § § | |
| Defendant. | § § | |

## ORDER ACCEPTING IN PART AND REJECTING IN PART FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On February 14, 2020, the United States Magistrate Judge issued Findings, Conclusions, and a Recommendation (the "FCR") in this case. FCR, ECF No. 23. The FCR recommended that the Court affirm the decision of the Commissioner of the Social Security Administration (the "Commissioner"), which concluded that Plaintiff Richard A. Ayala ("Ayala") is not disabled as defined by the Social Security Act. *Id.* at 1–2. Ayala filed Objections to the Findings, Conclusions, and Recommendation of the United States Magistrate Judge (ECF No. 24) on February 28, 2020. The Court ordered expedited briefing. Order, ECF No. 25. The Commissioner filed his Response (ECF No. 26) on March 5, 2020, and Ayala filed his Reply (ECF No. 27) on March 11, 2020.

The Court has conducted a de novo review of the FCR. For the following reasons, the Court **OVERRULES** Ayala's first objection and **SUSTAINS** Ayala's second objection. The Court **REMANDS** this case to the Commissioner for further administrative action.

I.  **BACKGROUND**

Ayala filed an application for supplemental security income based on his alleged disability. Admin. R. 19, ECF No. 14-1. The Commissioner denied these claims initially and upon

1

reconsideration. *Id.* Ayala then requested a hearing, and the Administrative Law Judge ("ALJ") held a video hearing. *Id.*

The ALJ's decision applied the statutory five-step framework, made findings at each step, and concluded that Ayala was not disabled under section 1614(a)(3)(A) of the Social Security Act. *Id.* at 21–27. Specifically, the ALJ found that (1) Ayala had not engaged in substantial gainful activity since the application date, (2) Ayala had two severe impairments impairments, (3) the severity of Ayala's impairments did not meet the criteria of any listed impairment, (4) Ayala had the residual functional capacity ("RFC") to perform a full range of work (with the exception of one nonexertional limitation), which precluded him from performing his past relevant work, (5) Ayala could nevertheless perform several jobs that exist in significant numbers in the national economy, and (6) Ayala was not disabled as defined in the Social Security Act. *Id.*

## II.     LEGAL STANDARD

On review of the Commissioner's denial of benefits, a reviewing court is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards when evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as more than scintilla and less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Commissioner, not the court, has the duty to weigh the evidence, resolve material conflicts in the evidence, and make credibility choices. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). So, when applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment; rather, the court scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a "conspicuous absence of credible choices"

or "no contrary medical evidence" to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal citation omitted).

The Social Security Administration uses a five-step process to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps are followed in order, and if at any step the Commissioner determines that the claimant is not disabled, the evaluation need not go on to the next step. *Id.* The five steps consider: (i) whether the claimant is engaged in substantial gainful activity; (ii) whether the claimant's impairments are medically severe; (iii) whether the claimant's medical impairment or combination of impairments meets or medically equals the criteria listed in the Listing of Impairments; (iv) whether the RFC precludes the claimant from performing his past relevant work; and (v) whether the combination of the claimant's RFC, age, education, and work experience allow for adjustments to be made to permit the claimant to work. *Id.* If the impairment is severe but does not meet or equal a listed mental impairment, then the Commissioner must conduct an RFC assessment. *Id.* § 404.1520a(d)(3).

## III. ANALYSIS OF OBJECTIONS

Ayala objects to the FCR for two reasons: (1) "The ALJ did not properly consider the effect of Ayala's hallucinations"; and (2) "The ALJ erred in failing to acknowledge or consider the reported [Global Assessment of Functioning ('GAF')] scores of record." Pl.'s Obj. 1, 3, ECF No. 24. The Court addresses each in turn.

### A. Ayala's Hallucinations

First, Ayala argues that the ALJ's RFC analysis at the statutory fourth step "did not account for the effect of Ayala's recognized hallucinations, and . . . did not consider or evaluate the reasons for Ayala's noncompliance with treatment." *Id.* at 3.

The determination that a claimant has a severe impairment is "not a sufficient condition for receiving benefits," but "means only that the claimant has passed the second step" of the analysis.

3

*Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987). A claimant's RFC is assessed to determine the work a claimant can still do, despite his present limitations. *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *12 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2018) (citing *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam)). On review of the Commissioner's decision, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether there is substantial evidence to support the decision. *Greenspan*, 38 F.3d at 236.

At the statutory fourth step, the ALJ assessed Ayala's RFC by "consider[ing] all symptoms and the extent to which th[ose] symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence." Admin. R. 23, ECF No. 14-1. The ALJ noted that Ayala alleged disability "due to major depression and schizoaffective disorder" and "alleged symptoms including paranoia, irritability, poor memory, difficulty sleeping, poor concentration, poor stress management, difficulty handling changes in routine, and both visual and auditory hallucinations." *Id.* The ALJ referenced the reports Ayala's fiancé completed and Ayala's testimony at the hearing, both of which referenced his hallucinations. *Id.* And the ALJ discussed Ayala's inconsistent history with medication and other treatment. *See id.* at 24–25.

Ultimately, the ALJ gave significant weight to the opinions of State agency physicians who "reviewed the medical evidence [and] concluded that the claimant retained the ability to perform detailed but not complex work, stating that the claimant's allegations were not fully supported by the record." *Id.* at 25. Those experts cited, among other considerations, Ayala's non-compliance with treatment. *Id.* But the ALJ also found "other evidence in the record that undermine[d] the alleged severity of the claimant's impairments," including evidence that Ayala was "able to live with his fiancé['s] children, follow TV programs, provide care for his children, do laundry, prepare meals, clean generally, manage finances, maintain friendships, get along with family members, travel with

4

his fiancé, use a cell phone, play electronic games, and use apps like Facebook." *Id.* at 26. Cumulatively, the evidence in the record led the ALJ to conclude that Ayala had the RFC "to perform a full range of work at all exertional levels" but with the nonexertional limitations of being "able to perform simple, routine, and repetitive tasks with only occasional interaction with coworkers, supervisors, and the general public." *Id.* at 22–23.

Though Ayala focuses on the ALJ's lack of explanation regarding "the effect of Ayala's recognized hallucinations" and "the reasons for Ayala's noncompliance with treatment," *see* Pl.'s Obj. 3, ECF No. 24, an ALJ need not always do an "exhaustive point-by-point discussion" to support a conclusion, *Aulder v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Thus, the Court finds that the ALJ's stated review of the entire record, along with her accompanying factual recitation and legal analysis, is sufficient to support the Commissioner's conclusion regarding Ayala's RFC without further discussion of the consistency or effect of Ayala's hallucinations. Ayala's first objection is **OVERRULED**.

### B. Ayala's GAF Scores

Ayala also argues that the ALJ erred by "reject[ing] the GAF scores of record, considered [to] be a 'medical opinion' by Social Security, without explanation." Pl.'s Obj. 4, ECF No. 24.

An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759–61 (5th Cir. 2017)). "The Social Security Administration has said that GAF scores 'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source.' *Soc. Sec. Disab. Claims Handbook* § 2:15 n.40 (citing AM–13066 REV)." *Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017).

5

The Magistrate Judge recognized that the ALJ was required to evaluate every medical opinion of record—including GAF scores—and that the ALJ "did not specifically reference Ayala's GAF scores." FCR 11–12, ECF No. 23. However, relying on *Jones v. Astrue*, No. 7:07-CV-155-O, 2008 WL 5024832 (N.D. Tex. Nov. 21, 2008) and *Hoelck v. Astrue*, 261 F. App'x 683, 685–86 (5th Cir. 2008), the Magistrate Judge concluded that the ALJ did not err because "she carefully reviewed the medical opinions and records in Ayala's file, including records of his treatment and evaluation at the facility where he received his GAF scores," FCR 12–13, ECF No. 23.

However, AM–13066 REV (the Social Security Administration's internal instructions, effective July 22, 2013) and several subsequent cases call *Jones* and *Hoelck* into question. *See, e.g.*, *Kneeland*, 850 F.3d 749; *Jackson v. Colvin*, No. 4:14-CV-759-A, 2015 WL 7681262 (N.D. Tex. Nov. 5, 2015), *adopted in* 2015 WL 7582339 (N.D. Tex. Nov. 25, 2015). For example, in *Kneeland*, the Fifth Circuit remanded an ALJ's decision because the ALJ rejected an expert's medical opinion without explanation. 850 F.3d at 759. The Fifth Circuit panel explained that "[t]he ALJ's root error was failing to address—or even mention—[the expert's] opinion in his decision." *Id.* at 761. Whether the ALJ "did not consider [the expert's] opinion, or considered it but assigned it no weight," was inapposite; the Fifth Circuit concluded remand was appropriate. *Id.* "If the former, remand [wa]s appropriate for consideration of [the expert's] opinion. If the latter, remand [wa]s appropriate for an explanation of the rejected medical opinion, or an explanation of what weight was assigned." *Id.*

In *Jackson*, this Court applied a similar rationale to an ALJ's review of a claimant's GAF scores. 2015 WL 7681262, at *3–5. After noting that "[f]ederal regulations and Social Security Rulings explicitly require that an ALJ must evaluate 'every medical opinion' of record," the Court referenced AM–13066–REV's instruction that GAF scores "should be treated as opinion evidence." *Id.* at *3 (quoting 20 C.F.R. §§ 404.1527, 416.927). There, the Court concluded that, even if "the ALJ failed to properly evaluate [the claimant's] GAF ratings," remand would be unnecessary because "the

6

ALJ's decision [wa]s supported by substantial evidence in the record." *Id.* at *5. But whereas the ALJ in *Jackson* "did specifically consider such scores as he reported them throughout his decision," *id.*, the ALJ here did not mention or cite Ayala's GAF scores. "Such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 762.

The Commissioner contends the ALJ did not err by omitting the GAF scores from her decision. In support, the Commissioner offers two unpersuasive arguments: (1) "the ALJ could have permissibly concluded that the GAF scores were entitled to less weight or conflicted with the medical evidence and opinions in the record," and (2) "the revised AM notes problems with GAF ratings." Def.'s Resp. 5, 7, ECF No. 26. The argument that the ALJ *could have* rejected the GAF scores highlights the core issue: Even if the ALJ did reject the GAF scores, she failed to "provid[e] an explanation." *Winston*, 755 F. App'x at 398. This constitutes reversible legal error "even if good reasons exist for disregarding the opinion." *Id.* The ALJ, not the Court, must consider potential problems and decide what weight to afford Ayala's GAF scores; and she must provide an explanation for that choice.

Accordingly, the Court concludes that the ALJ's failure to reference and "explain the rejection of" Ayala's GAF scores "justifies a remand." *Id.*[1] Ayala's second objection is **SUSTAINED.**

## IV. CONCLUSION

Having conducted a de novo review of the FCR and Ayala's Objections, the Court **OVERRULES** Ayala's first objection and **SUSTAINS** Ayala's second objection. Accordingly, the Court **REMANDS** this case to the Commissioner for further administrative action.

---

[1] Had the ALJ considered yet "mischaracterize[d] the GAF scores," or otherwise incorrectly evaluated them, the Court would apply a harmless-error analysis to determine whether the ALJ's decision was nevertheless supported by substantial evidence in the record. *Jackson*, 2015 WL 7681262, at *5. But because the ALJ rejected "a medical opinion . . . without explanation," remand is required. *Kneeland*, 850 F.3d at 759.

7

**SO ORDERED** on this **13th day of March, 2020.**

                                        _____
                                        Reed O'Connor
                                        **UNITED STATES DISTRICT JUDGE**